UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (WORCESTER)

| | |
|---|---|
| IN RE:<br><br>COREY S. FINKELSTEIN,<br><br>Debtor. | CASE NO. 08-40743 (HJB)<br><br>CHAPTER 7 |

**OBJECTION OF PENNEY KEYES TO EMERGENCY MOTION
TO STAY ORDER APPROVING SETTLEMENT AGREEMENT**

Creditor Penney Keyes, f/k/a Penney Finkelstein, ("Keyes") hereby objects to the Debtor's Emergency Motion to Stay Order Approving Motion of Chapter 7 Trustee to Approve Settlement with Penney Keyes (the "Emergency Motion") for the following reasons:

**FACTUAL BACKGROUND**

1.   The last deadline set by the Court for the Debtor to object to the settlement agreement (the "Settlement") between the Trustee and Keyes expired on December 2, 2009.

2.   On November 27, 2009, counsel for Keyes informed the Debtor's divorce counsel by e-mail that counsel for Keyes would agree to a final extension to object to the Settlement until December 7, 2009 as long as it provided that it was the final extension, and no further extensions would be permitted.

3.   The Trustee later informed counsel for Keyes that he would not agree to any further extensions beyond December 2, 2009.

4.   The Debtor did not file any motion to extend the deadline on or before December 2, 2009.

5.   By Order dated December 7, 2009 (the "Order"), the Court approved the Settlement.

6. On December 8, 2009, the Debtor filed a Motion to Vacate the Order (the "Motion to Vacate"), to which the Trustee assented.

7. That same date, Keyes filed an Opposition to Debtor's Motion to Vacate (the "Opposition").

8. On December 11, 2009, the Debtor filed the Emergency Motion. Despite the fact that the Court had done nothing to vacate or set aside its Order, the Debtor also filed an Objection to the Settlement (the "Objection").

9. The Trustee filed a Withdrawal of Assent to Debtor's Motion to Vacate on December 11, 2009.

## ARGUMENT

10. "It is well settled that the standards to be applied by the Court in the face of a motion to stay the effect of its order are as follows: (1) there is a likelihood of success on the merits[], (2) the moving party will suffer irreparable harm if a stay is not granted; (3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and (4) the public interest would not be adversely affected by the issuance of the stay." *In re Theoclis*, 213 B.R. 880, 881 (Bankr. D. Mass. 1997). "Allowance of the motion requires the presence of each of the foregoing factors, at least in some degree." *Id.*

11. The Debtor fails to address this legal standard in the Emergency Motion, providing no argument for the presence of even one – let alone all four – of the required factors.

12. A proper analysis of these factors reveals that the Debtor's request for a stay must be denied.

13. First, the Debtor has little to no likelihood of success on the merits of his Motion to Vacate or on his Objection. With respect to the Motion to Vacate, the Debtor has failed to

demonstrate any exceptional circumstances that would warrant the extraordinary relief requested. *See Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002) (stating "that relief under Rule 60(b) [– which governs Motions to Vacate –] is extraordinary in nature and that motions invoking that rule should be granted sparingly"). In fact, the records shows that the Debtor ignored the Court's deadline to object to the Settlement and only acted after the Settlement was approved.

14. Likewise, with respect to the Objection, the Debtor has provided no evidence indicating that the now approved Settlement falls below "the lowest possible point in the range of reasonableness." *In re 110 Beaver St. P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000) (internal citations and quotations omitted).

15. The Objection rests on the impossible assumption that the Debtor will be totally successful in his appeal of the Probate Judgment.[1] Specifically, the assumption is that in a marriage where the husband held virtually all of the assets, and where the Probate Court awarded a portion of those assets, alimony, and attorneys' fees to the wife for her support, the Appeals Court will, on review, find that the Probate Court committed such egregious error that it will see fit to give nothing – or virtually nothing – to the asset-less wife. Indeed, by the Debtor's own calculation, for his argument to have any merit – and for him to have any standing to pursue the Objection – the Probate Judgment would have to be reduced from approximately $2.2 million (as it currently stands), to less than $141,195. Objection ¶ 12. There is simply no chance that this will occur.

---

[1] The Debtor neglects to mention that his appeal on the merits of the Probate Judgment has already been dismissed. Probate Docket # 182. The pending "appeal," is simply an appeal of this dismissal, where – as in this case – the Debtor is attempting to convince the Court to excuse a missed deadline. *Id.* at # 185.

16.     In any event, this assumption has no bearing on the present "reasonableness" of the Settlement. The Trustee – as the duly appointed representative of the Debtor's estate – has acknowledged that Keyes has a claim of $2.2 million that may be entitled to priority status. If afforded priority status, Keyes would essentially wipe out the entire estate, leaving no assets for the remaining unsecured creditors. Therefore, acting in the best interests of the estate and all of its creditors, the Trustee has entered into the Settlement with Keyes, granting priority status to only $500,000 of her claim, and treating the remaining $1.7 million as a non-priority, unsecured claim. The Debtor's argument in the Objection does nothing to affect the reasonableness of this Settlement, and, consequently, he does not have a substantial likelihood of success.

17.     Second, the Debtor has not shown that he will suffer any harm – let alone any "irreparable harm" – that would outweigh the injury to Keyes if the stay were granted. Keyes is in desperate need of financial support due to the Debtor's failure to pay her the amounts awarded in the Probate Judgment. Flagrantly disregarding Probate Court orders in that regard, the Debtor has caused Keyes significant financial maladies. *See* Probate Docket #'s 122, 141, 178 (contempt orders entered against Debtor) (a true and accurate copy of the Probate Docket is attached hereto as Exhibit A). Her expenses continue to exceed her income, and she is depleting available assets as her debts steadily mount. The proceeds that she will obtain through the Settlement will help to satisfy many of these debts and will provide her with finances necessary to remain solvent. Granting the stay, on the other hand, would exacerbate an already dire situation.

18.     Finally, Keyes submits that granting the stay would be opposed to the public interest. The Debtor has persisted in calculated efforts of delay aimed at harming Keyes. From his disregard of valid court orders, to his filing of bankruptcy; from his repeated failure to meet

court-imposed deadlines, to his meritless appeals, the Debtor has taken one action after another in order to avoid his obligations to Keyes. *See, e.g.,* Probate Docket #'s 96 (appeal), 107 (motion for late opposition), 113 (motion for stay), 122 (contempt), 141 (contempt), 148 (motion for relief from judgment), 159 (appeal), 160 (appeal), 178 (contempt), 185 (appeal). "[T]he public interest lies not in permitting this misuse of the [judicial] process," and should not be tolerated. *See In re Dziurgot-Farnsworth*, No. 08-42577-JBR, 2008 WL 5054288, at *3 (Bankr. D. Mass. Nov. 26, 2008) (denying motion for stay by debtor seeking, *inter alia*, to delay and avoid Probate orders); *see also Shine v. Shine*, 802 F.2d 583, 585-86 (1st Cir. 1986) (quoting *Wetmore v. Markoe*, 196 U.S. 68 (1904)) ("[B]ankruptcy law should receive such an interpretation as will…not make it an instrument to deprive [a] dependent wife [] of the support and maintenance due [her] from the husband.").

## **RELIEF REQUESTED**

WHEREFORE, Keyes respectfully requests that the Court (i) deny the Debtor's Emergency Motion, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: December 14, 2009    Respectfully submitted,

Penney Keyes

By her attorneys,

/s/ Thomas I. Elkind
Thomas I. Elkind (BBO #153080)
*telkind@foley.com*
Geoffrey M. Raux (BBO# 674788)
*graux@foley.com*
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts  02199
617.342.4000 Telephone
617.342.4001 Facsimile

BOST_1394252.2